UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHILLIPS PETROLEUM COMPANY VENEZUELA LIMITED and CONOCOPHILLIPS PETROZUATA B.V., <br><br> Petitioners, <br><br> v. <br><br> PETRÓLEOS DE VENEZUELA, S.A., CORPOGUANIPA, S.A., and PDVSA PETRÓLEO, S.A., <br><br> Respondents. | Case No. 18-cv-3716 <br><br> **Oral Argument Requested** |

**PETITION TO CONFIRM, RECOGNIZE AND ENFORCE ARBITRATION AWARD**

Petitioners, Phillips Petroleum Company Venezuela Limited and ConocoPhillips Petrozuata B.V. (together, "ConocoPhillips" or the "Petitioners"), by and through the undersigned counsel, hereby petition this Court for an order and judgment confirming, recognizing and enforcing an arbitration award against Petróleos de Venezuela, S.A., Corpoguanipa, S.A. and PDVSA Petróleo, S.A. (together, the "Respondents"). The Petition is supported by an accompanying memorandum of law and Declaration of Elliot Friedman dated April 26, 2018 ("Friedman Declaration"), with Exhibits. In support of this Petition, ConocoPhillips respectfully states as follows:

**Nature of Action**

1.  Petitioners bring this proceeding under Section 207 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 207, and Article III of United Nations Convention for the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, (the "New York Convention"), to confirm, recognize and enforce a final, binding arbitration award (the "Final Award") issued in

New York, New York, on April 24, 2018,[1] by an arbitral tribunal (the "Tribunal") duly constituted under the auspices of the International Chamber of Commerce ("ICC") in *Phillips Petroleum Company Venezuela Limited and ConocoPhillips Petrozuata B.V. v. Petróleos de Venezuela, S.A., Corpoguanipa, S.A. and PDVSA Petróleo, S.A.*, Case No. 20549/ASM/JPA (C-20550/ASM) (the "Arbitration").  Friedman Decl. ¶ 4 & Ex. A.

2. ConocoPhillips respectfully requests that this Court confirm, recognize, and enforce the Final Award and incorporate its terms into a judgment in favor of ConocoPhillips. Petitioners also seek to recover the fees and expenses incurred in confirming the Final Award, along with further relief as this Court may find just and proper.

**Parties**

3. Petitioner Phillips Petroleum Company Venezuela Limited ("ConocoHamaca") is a wholly-owned subsidiary of ConocoPhillips Company. ConocoHamaca is incorporated under the laws of Bermuda, having its registered office at 600 North Dairy Ashford, Houston, Texas 77079-1175.  At the time of the expropriation by the Bolivarian Republic of Venezuela ("Venezuela") of large parts of the oil industry in the country, leading to the disputes underlying the Final Award, ConocoHamaca held a 40 percent interest in the Hamaca Project, as defined herein.

4. Petitioner ConocoPhillips Petrozuata B.V. ("ConocoPetrozuata") is a wholly-owned subsidiary of ConocoPhillips Company.  ConocoPetrozuata is incorporated under the laws of The Kingdom of the Netherlands, having its registered office at New Babylon Gardens, Anna van Buerenplein 41, 2595 DA, The Hague, Netherlands.  At the time of Venezuela's expropriation

---

[1] The ICC transmitted a copy of the Final Award to the parties on April 25, 2018.  Friedman Decl. ¶ 4.

that led to the disputes underlying the Final Award, ConocoPetrozuata, as successor-in-interest to Conoco Orinoco Inc. (a company likewise incorporated under the laws of The Kingdom of the Netherlands), held a 50.1 percent interest in the Petrozuata Project, as defined herein.

5. Respondent Petróleos de Venezuela, S.A. ("PDVSA") is the national oil company of Venezuela, wholly owned by Venezuela and incorporated in Caracas, Venezuela.

6. Respondent PDVSA Petróleo ("PPSA"), a corporation organized and existing under the laws of Venezuela, is the successor in interest of Maraven S.A., which executed the Petrozuata Association Agreement, as defined herein. PPSA is wholly owned by Respondent PDVSA.

7. Respondent Corpoguanipa, S.A. ("Corpoguanipa"), a corporation organized and existing under the laws of Venezuela, is a wholly owned subsidiary of Respondent PPSA. Respondent Corpoguanipa executed the Hamaca Association Agreement, as defined herein.

## Jurisdiction and Venue

8. The Arbitration was seated, and the Final Award was rendered, in New York City. Petitioners bring this summary proceeding under Chapter 2 of the FAA, 9 U.S.C. §§ 201 *et seq.*, and Article III of the New York Convention, to confirm, recognize and enforce the Final Award.

9. This Court has jurisdiction over the subject matter of this proceeding under 9 U.S.C. § 203, which provides that the "district courts of the United States . . . have original jurisdiction over" any "action or proceeding falling under the [New York] Convention." This proceeding "fall[s] under the Convention," because the Final Award arises out of commercial contracts between Petitioners and Respondents—the Association Agreements and Guarantees, as defined herein—none of which is a citizen of the United States. *See* 9 U.S.C. § 202 (providing that an "arbitral award arising out of a legal relationship . . . which is considered as commercial . . . falls

3

under the Convention" unless the relationship was "entirely between citizens of the United States").

10. Venue is proper in this District under 9 U.S.C. § 204, because the Association Agreements and Guarantees (described further herein) specify New York City as the seat of arbitration. *See* 9 U.S.C. § 204 (providing that an "action or proceeding over which the district courts have jurisdiction pursuant to section 203 of this title may be brought . . . in such court for the district [] which embraces the place designated in the agreement as the place of arbitration if such place is within the United States").

11. PDVSA is an instrumentality of a foreign state under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq*.

12. PDVSA is not immune from the jurisdiction of this Court for purposes of this Petition because the FSIA denies immunity to foreign states (or their instrumentalities, as defined in 28 U.S.C. § 1603(a)) in an action to confirm an arbitral award governed by the New York Convention. Specifically, the FSIA provides that a foreign state (or its instrumentality) is not immune to jurisdiction in a suit:

> either to enforce an agreement made by the foreign state with or for the benefit of a private party…or to confirm an award made pursuant to [] an agreement to arbitrate, if…the agreement or award is or may be governed by a treaty or other international agreement in force in the United States calling for the recognition and enforcement of arbitral awards.

28 U.S.C. § 1605(a)(6). As noted above, the Final Award is governed by the New York Convention, which is in force in the United States. *See* 9 U.S.C. § 201. Further, Respondents have waived any immunity they might seek to assert in the underlying Association Agreements and Guarantees. *See* Friedman Decl. Ex. C at § 17.7; Ex. D at §4; Ex. E at §9; 28 U.S.C. § 1605(a)(1).

13. This Court has personal jurisdiction over PDVSA as an agency or instrumentality of Venezuela under 28 U.S.C. § 1330(b), which confers "[p]ersonal jurisdiction over a foreign state" and any "agency or instrumentality" thereof "as to every claim for relief" for which the foreign state does not enjoy sovereign immunity under 28 U.S.C. §§ 1605–1607, and over which the Court has subject matter jurisdiction. 28 U.S.C. § 1330(b); 28 U.S.C. § 1603(a)-(b).

14. This Court has personal jurisdiction over all the Respondents pursuant to 9 U.S.C. § 9 and Federal Rule of Civil Procedure 4(k), because the Respondents consented to arbitrate in New York and did, in fact, arbitrate in New York. *See In re Coudert Bros. LLP*, 2017 WL 1944162, at *4 (S.D.N.Y. May 10, 2017) ("By consenting to arbitration in New York, Defendant has agreed to be amenable to the personal jurisdiction of this Court.") (citing *Doctor's Assocs. v. Stuart*, 85 F.3d 975, 983 (2d Cir. 1996) ("A party who agrees to arbitrate in a particular jurisdiction consents not only to personal jurisdiction but also to venue of the courts within that jurisdiction.")). Further, if PPSA and/or Corpoguanipa were deemed an organ, agency or instrumentality of a foreign state within the meaning of 28 U.S.C. § 1603, this Court would also have personal jurisdiction over them pursuant to 28 U.S.C. § 1330(b).

## Background

### a) The Agreements and Respondents' Failure to Perform

15. The Final Award results from disputes between Petitioners and Respondents that arose under Association Agreements and Guarantees between the parties, specifically:

   i. the Petrozuata Association Agreement (dated November 10, 1995 and as modified June 18, 1997, between Conoco Orinoco Inc. (of which ConocoPetrozuata is the successor in interest) and Maraven S.A. (of which PPSA is the successor in interest)) (Friedman Decl. ¶ 7 & Ex. B);

  ii. the Hamaca Association Agreement (dated July 9, 1997, between (among others) Corpoguanipa and ConocoHamaca) (*id*. ¶ 7 & Ex. C) (together with the Petrozuata Association Agreement, the "Association Agreements");

  iii. the Petrozuata Guaranty (dated November 10, 1995, between Conoco Orinoco Inc. (of which ConocoPetrozuata is the successor in interest) and PDVSA) (*id*. ¶ 7 & Ex. D); and

  iv. the Hamaca Guarantee (dated July 9, 1997, between (among others) PDVSA and ConocoHamaca) (*id*. ¶ 7 & Ex. E) (together with the Petrozuata Guaranty, the "Guarantees").

16. The Association Agreements and Guarantees set forth the commercial terms of an arrangement under which ConocoPhillips would invest and participate in two extra-heavy crude oil projects in the Orinoco oil belt in Venezuela, the "Petrozuata Project" and the "Hamaca Project" (together the "Projects").

17. In the early 1990s, the Venezuelan government decided, as a matter of strategic and economic priority, to develop the vast hydrocarbon resources in the Orinoco oil belt, which it estimated to contain over one trillion barrels of oil. The exploitation of the Orinoco's extra-heavy oil reserves had stymied Venezuela since the 1920s. The Venezuelan government recognized that it did not have the means or ability to carry out that task alone.

18. Venezuela therefore embarked on the *Apertura Petrolera*, or "Oil Opening." To induce foreign investors to return to an oil industry that had been nationalized less than 20 years before, Venezuela offered an attractive set of incentives, including majority equity stakes in long-term oil projects, subject to a bespoke fiscal regime that included substantially reduced income taxes and royalties.

19. The contracts that accompanied this Oil Opening—including the Association Agreements and Guarantees at issue in the Arbitration—also provided foreign investors with additional layers of protection. In particular, the PDVSA subsidiaries that executed the

Association Agreements agreed to partially indemnify Petitioners for specified Venezuelan government actions that would be adverse to Petitioners' interests (referred to in the Association Agreements as "Discriminatory Actions"). Further, PDVSA guaranteed the contractual performance of its subsidiaries via the Guarantees that accompanied the Hamaca and Petrozuata Association Agreements.

20. On the basis of these fiscal inducements and contractual protections, ConocoPhillips invested billions of U.S. dollars (over a decade) into the Projects to extract and upgrade extra-heavy crude oil. Commercial production of oil commenced in 2001 at the Petrozuata Project and in 2004 at the Hamaca Project.

21. However, beginning in 2004, the Venezuelan government initiated a series of measures that eventually resulted in the confiscation of the Projects and their delivery into Respondents' hands in 2007, without any compensation paid to Petitioners.

22. Notwithstanding the adverse measures and the expropriation, Respondents Corpoguanipa and PPSA did not pay the indemnification due to Petitioners under the Association Agreements (for "Discriminatory Actions"), while PDVSA failed to ensure its subsidiaries' performance and that these payments were made. At the time of the final dispossession in 2007, the Projects had together achieved in excess of US $14 billion in revenue, and had yielded dividends to Petitioners in excess of US $1 billion in 2006 alone.

23. Petitioners and related entities then commenced two sets of actions against Respondents and Venezuela. First, ConocoPhillips entities commenced an arbitration against Venezuela for *inter alia* the unlawful expropriation of their investments in the Projects. That arbitration proceeding, which is being heard under the auspices of the International Centre for Settlement of Investment Disputes ("ICSID"), an arm of the World Bank, is premised on an

international law instrument—a bilateral investment treaty—and the claims asserted are governed by international law. That arbitration proceeding remains pending: in 2013, the ICSID tribunal found Venezuela to have effected the expropriation in violation of international law, and the ICSID tribunal is in the process of determining the damages payable for that breach. A final award is expected in the fall of this year. *See* Friedman Decl. ¶¶ 14-15 & Ex. I.

24. Second, on October 10, 2014, Petitioners brought two contractual ICC arbitration claims against Respondents under national law instruments—the Association Agreements and Guarantees—that were subsequently consolidated and which Arbitration is the subject of this Petition. *Id.* ¶¶ 8-9 & Exs. F & G.

   b) *The Agreements to Arbitrate*

25. The Association Agreements and Guarantees provided for arbitration in the event of a dispute between the parties. The arbitration clauses in all of those contracts are consistent, providing for arbitration under the rules of the ICC and with the seat of arbitration in New York City:

   i. Section 13.16 of the Petrozuata Association Agreement provides as follows:

   *All disputes arising in connection with the present Agreement shall be finally settled by arbitration under the Rules of Conciliation and Arbitration of the International Chamber of Commerce in accordance with the said Rules. . . . The place of arbitration shall be New York, New York, United States of America. . . . Any decision or award of the arbitral tribunal . . . shall be final and binding on the parties to the arbitration proceeding.*

   ii. Section 17.2 of the Hamaca Association Agreement provides as follows:

   *Any dispute arising out of, or relating in any way to this Agreement shall be settled exclusively and finally by arbitration . . . in accordance with ICC Rules . . . . [A]ll proceedings . . . shall be conducted in New York City. . . . The award . . . shall be final and binding upon the Parties.*

iii.  Section 4 of the Petrozuata Guaranty provides as follows:

*All disputes arising in connection with this Guaranty, or the breach, termination, interpretation, enforceability or validity thereof, shall be finally settled by binding arbitration in New York, New York, USA, under the Rules of Conciliation and Arbitration of the International Chamber of Commerce.*

iv.  Section 13 of the Hamaca Guarantee provides as follows:

*Any disputes resulting from or related to this Guarantee or its performance will be resolved exclusively by arbitration and any arbitration ruling will be binding. The arbitration will be governed and conducted in accordance with the [rules of] the International Chamber of Commerce. . . . All arbitration procedures described in this Guarantee will be conducted in the city of New York, United States of America.*

Friedman Decl. Ex. B at § 13.16; Ex. C at § 17.2; Ex. D at §4; Ex. E at § 13.

   c)  **ConocoPhillips Commenced Arbitration Proceedings**

26.  ConocoPhillips commenced the Arbitration that is the subject of this Petition on October 10, 2014 by filing two Requests for Arbitration (one under each Association Agreement and related Guaranty). In their Requests for Arbitration, Petitioners asserted claims that included, *inter alia*, claims for indemnification for "Discriminatory Actions" under the relevant provisions of the Association Agreements and Guarantees. Each Petitioner requested an award of compensation plus interest, other relief as the Tribunal considered appropriate, and the legal fees and costs incurred in the arbitral proceedings. Friedman Decl. ¶ 8 & Exs. F & G.

27.  On January 13, 2015, Respondents consented to the consolidation of these ICC proceedings under Case No. 20549/ASM (C-20550/ASM) pursuant to Article 10 of the 2012 Rules of Arbitration of the International Chamber of Commerce ("ICC Rules"), which governed the ICC Arbitration. *Id.* ¶ 9.

28. The Tribunal was constituted on March 27, 2015 in accordance with the ICC Rules. It consisted of two arbitrators, Professor Laurent Aynès (appointed by Petitioners) and Professor Andrea Giardina (appointed by Respondents), who together nominated Dr. Laurent Lévy as President of the Tribunal. *Id.* ¶ 10 & Ex. H.

29. As stipulated in the Association Agreements, the legal seat of the arbitration was New York, New York. The Arbitration hearings physically took place in New York, New York and in Washington, D.C.

30. Pursuant to the timetable established by the Tribunal, the parties exchanged briefing (accompanied by witness statements, expert reports and exhibits) and engaged in documentary discovery. The initial Case Management Conference was held on June 12, 2015, in New York City. The parties made written submissions to the Tribunal in support of their claims on July 17, 2015, May 27, 2016, and March 20, 2017 (by Petitioners); and on February 12, 2016, September 9, 2016 and March 20, 2017 (by Respondents). The Tribunal convened a final hearing between November 28, 2016 and December 10, 2016. Friedman Decl. ¶¶ 11-12.

31. The parties were represented by counsel throughout the course of the Arbitration. Respondents were represented by attorneys of the law firm Curtis, Mallet-Provost, Colt & Mosle LLP.

    *d) The Final Award*

32. The Tribunal rendered its unanimous Final Award on April 24, 2018, in New York, New York. The Final Award is binding upon the parties. A copy of the Final Award was delivered to the parties on April 25, 2018 in accordance with the ICC Rules. Friedman Decl. ¶ 4 & Ex. A.

33. The Tribunal found that Respondents were required to indemnify Claimants under the Discriminatory Actions provisions contained in the Association Agreements. Friedman Decl. Ex. A at ¶ 294.

34. Specifically, the Tribunal found that Venezuela's imposition of an income tax increase on the Projects, and the government's ultimate expropriation of Petitioners' interests in the Projects, were Discriminatory Actions for which indemnification was owing. *Id*.

35. The Tribunal accordingly ordered Respondents:

   i. PPSA and PDVSA, jointly and severally, to pay Petitioner ConocoPetrozuata, under the Petrozuata Association Agreement and Petrozuata Guaranty, the sum of US $489,334,468.87, plus simple interest at the rate of 12-month LIBOR, running from May 28, 2016;

   ii. Corpoguanipa and PDVSA, jointly and severally, to pay ConocoHamaca, under the Hamaca Association Agreement and Hamaca Guarantee, the sum of US $1,496,712,745.85, plus simple interest at the rate of 3-month LIBOR, running from May 28, 2016; and

   iii. to reimburse to Petitioners the sum of US $231,200 in costs, with simple interest to accrue on that amount at 12-month LIBOR starting from the date of the Final Award.

*Id*. ¶ 544 (joint and several liability) & ¶ 1163 (dollar amounts).

36. With interest to date under the terms of the Final Award, the Final Award against PPSA and PDVSA, jointly and severally, presently stands in the amount of US $506,174,755. With interest to date, the Final Award against Corpoguanipa and PDVSA, jointly and severally, presently stands at the amount of US $1,532,157,127. Together with the award to Petitioners for

reimbursement of costs, the aggregate value of the Final Award, at present, is US $2,038,563,082. Friedman Decl. ¶ 5.

37. The Award has not been has been set aside or suspended by a competent authority of the country in which, or under the law of which, the Award was made.

### e) Respondents Have Not Paid the Final Award

38. Respondents have not paid Petitioners any portion of the Final Award and have expressed no intention to do so, and have not responded to a demand letter issued immediately after the ICC transmitted the Final Award to the parties. *Id*. ¶ 16.

39. Pursuant to 9 U.S.C. § 207, Petitioners have brought this action within three years after the Award was issued on April 24, 2018.

## COUNT I

## (Confirmation of Award Under 9 USC § 207)

40. ConocoPhillips incorporates each and every allegation in the preceding paragraphs as if set forth fully herein.

41. The United States is a contracting party to the New York Convention, as is Venezuela.[2]

42. The Final Award is governed by the New York Convention (made applicable in this proceeding by Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 201 *et seq.*), because the Final Award arises out of commercial contracts between Petitioners and Respondents, none of whom is a citizen of the United States. *See* 9 U.S.C. § 202.

---

[2] *See* New York Arbitration Convention, Contracting States, http://www.newyorkconvention.org/countries (last accessed April 26, 2018).

43. Article IV of the New York Convention provides that a party applying for recognition and enforcement of an award, such as Petitioners here, "shall, at the time of the application, supply: (a) [t]he duly authenticated original award or a duly certified copy thereof; [and] (b) [t]he original agreement [to arbitrate] referred to in article II or a duly certified copy thereof." A copy of the Final Award, duly authenticated and transmitted to Petitioners, is submitted herewith as Exhibit A to the Friedman Declaration.

44. The parties' agreements to arbitrate are found in section 17 of the Hamaca Association Agreement, section 13 of the Hamaca Guarantee, section 13.16 of the Petrozuata Association Agreement, and section 4 of the Petrozuata Guaranty. Those agreements are appended as Exhibits B, C, D & E to the Friedman Declaration.

45. The Award arose out of a legal relationship that is commercial within the meaning of 9 U.S.C. § 202.

46. Pursuant to Article 31(3) of the applicable 2012 ICC Rules, the Award was made at the place of arbitration, New York, New York, United States of America.

47. Pursuant to Article 34(6) of the applicable 2012 ICC Rules, the Final Award is "binding on the parties." In addition, the Hamaca Association Agreement and Hamaca Guarantee expressly provide that arbitration rulings will be "binding." *See* Friedman Decl. Ex. C § 17.2(e) & Ex. E § 13. The Petrozuata Association Agreement and Petrozuata Guaranty likewise provide for "binding" arbitration. *See* Friedman Decl. Ex. B § 13.16 & Ex. D § 4.

48. The Final Award is therefore final and binding within the meaning of the New York Convention and Chapter 2 of the FAA.

49. 9 U.S.C. § 207 provides that, in an action to confirm an award governed by the New York Convention, the "court *shall* confirm the award unless it finds one of the grounds for refusal

or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207 (emphasis added).

50. For awards governed by the New York Convention rendered in the United States, the domestic provisions of the FAA apply, which provide that a court may vacate an arbitration award in certain narrow circumstances expressly enumerated in the FAA. *See* 9 U.S.C. § 10.

51. Further, the party resisting confirmation or seeking vacatur of an award has the "heavy" burden of proving that one of the explicit grounds enumerated in the FAA or the New York Convention applies. *See Zeiler v. Deitsch*, 500 F.3d 157, 164 (2d Cir. 2007) (party opposing confirmation has the burden to prove that one of the defenses applies and noting that the "burden is a heavy one, as the showing required to avoid summary confirmance is high") (internal citations omitted). As explained further in the accompanying Memorandum of Law, none of the New York Convention's or the FAA's enumerated grounds for refusing or deferring recognition applies to the Final Award.

52. For the foregoing reasons, Petitioners are entitled to an order confirming, recognizing, and enforcing the Award pursuant to 9 U.S.C. § 207 and Article III of the New York Convention. Petitioners respectfully request the Court to confirm the Final Award by entering judgment in favor of Petitioners and against Respondents in the amount of the Final Award with interest as provided therein, plus the costs of this proceeding.

## **Prayer**

WHEREFORE, Petitioners, Phillips Petroleum Company Venezuela Limited and ConocoPhillips Petrozuata B.V., respectfully request:

    a. an Order pursuant to 9 U.S.C. § 207 and Article III of the New York Convention confirming, recognizing, and enforcing the Final Award and entering Judgment thereon;

    b.    a Judgment in favor of Phillips Petroleum Company Venezuela Limited, and against Corpoguanipa, S.A. and Petróleos de Venezuela, S.A., in the amount awarded to Phillips Petroleum Company Venezuela Limited in the Final Award, US $1,496,712,745.85, plus simple interest at a rate of 3-month LIBOR, running from May 28, 2016 (as provided by the Final Award);

    c.    a Judgment in favor of ConocoPhillips Petrozuata B.V., and against PDVSA Petróleo, S.A. and Petróleos de Venezuela, S.A., in the amount awarded to ConocoPhillips Petrozuata B.V. in the Final Award, US $489,334,468.87, plus simple interest at a rate of 12-month LIBOR, running from May 28, 2016 (as provided by the Final Award);

    d.    a Judgement in favor of Petitioners against Respondents for the costs ordered in the Final Award, amounting to US $231,200.00, with simple interest to accrue on that amount at 12-month LIBOR starting from the date of the Final Award (as provided by the Final Award);

    e.    an Award of Petitioners' costs of this civil proceeding, including reasonable attorneys' fees incurred in bringing this proceeding;

    f.    an Order retaining jurisdiction in this Court over the matter for any further proceedings as may be necessary to enforce the Final Award and any further awards or judgments, which may be obtained by Petitioners against Petróleos de Venezuela, S.A., PDVSA Petróleo, S.A. and Corpoguanipa, S.A.; and

    g.    any other relief that this Court, in the interests of justice, deems necessary and proper.

A proposed order is appended hereto.

Dated: April 26, 2018
New York, New York

    Respectfully submitted,

    By: /s/ Michael S. Kim

    Michael S. Kim
    Marcus J. Green
    Carrie A. Tendler
    KOBRE & KIM LLP
    800 Third Avenue

New York, New York 10022
T +1 (212) 488-1200
Michael.Kim@kobrekim.com
Marcus.Green@kobrekim.com
Carrie.Tendler@kobrekim.com

D. Brian King (*pro hac vice pending*)
Elliot Friedman
Sam Prevatt
FRESHFIELDS BRUCKHAUS DERINGER US LLP
601 Lexington Avenue 31st Floor
New York, New York 10022
T +1 (212) 277 4000
Brian.King@freshfields.com
Elliot.Friedman@freshfields.com
Sam.Prevatt@freshfields.com

*Attorneys for Petitioners Phillips Petroleum Company Venezuela Limited & ConocoPhillips Petrozuata B.V.*